UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

DAVID JOSEPH,

Plaintiff,

v.

DAVID ROBRAHN,

Defendant.

Case No. 1:13-cv-00428-CWD

**ORDER RE: DEFENDANT'S MOTION IN LIMINE**

## INTRODUCTION

Before the Court is Defendant's motion in limine to exclude certain testimony by Plaintiff's treating physician, Dr. Alexander, and to exclude evidence of Medicare and GEHA contractual adjustments or write-downs as a component of damages. The Court conducted a hearing on the motion on July 21, 2015. (Dkt. 52). Although plaintiff did not timely file a responsive brief, his arguments contained within his trial brief, filed one day prior to the hearing, were reviewed and considered.

For the reasons set forth below, the Court will deny the motion. But Defendant's objection to the testimony of Dr. Alexander as set forth in his motion and during the hearing is preserved for trial, without the need to restate the objection.

## ANALYSIS

### 1. Dr. Alexander's Opinions

Defendant objects to the introduction of Dr. Alexander's opinions that were not set forth in Plaintiff's initial disclosures. According to Plaintiff's initial disclosures, Dr. Alexander's expert opinion testimony was described as follows: he will testify to the "medical surgery and procedures he performed on plaintiff; he will use the x-rays, films and other medical records to illustrate to the jury how the fractures occurred; [and] the surgical procedures to repair it." Defendant indicates the initial disclosures were not supplemented prior to the taking of Dr. Alexander's trial deposition on November 13, 2014.[1] But, after the deposition occurred, Plaintiff supplemented his Rule 26(a) disclosures to indicate that Dr. Alexander may testify about the degree of impact and force necessarily produced to cause the fractures Dr. Alexander observed on x-ray films and during surgery.

Dr. Alexander treated Plaintiff on March 26, 2013, the day after the accident occurred at the base of Bald Mountain in Ketchum, Idaho. Plaintiff had stopped skiing, and apparently was struck from behind by Defendant, who was riding a snowboard. Plaintiff was seen in the emergency room that same day. According to Dr. Alexander, Plaintiff suffered a concussion, injured his left shoulder, and suffered a displaced fracture of his clavicle that Dr. Alexander determined required surgical repair to avoid a nonunion

[1] The parties agreed that Dr. Alexander's videotaped deposition testimony will be presented to the jury in lieu of live testimony.

or perforation of the skin. Dr. Alexander performed surgery to repair Plaintiff's clavicle on March 27, 2013.

During questioning of Dr. Alexander during his deposition, he opined about the "degree of impact and force produced" during the collision, and offered opinions about Plaintiff's alleged concussive symptoms. Defendant contends such testimony should be excluded because Plaintiff's initial disclosure did not include such testimony within its scope.

With regard to Plaintiff's concussion, Dr. Alexander testified that Plaintiff "was knocked out. And, in fact, he was hit pretty hard by the – indicating that the helmet had been broken during the crash." Dr. Alexander examined the CT scan records taken in the emergency room on March 25, 2013. Based upon the CT scan results and the emergency room reports, Dr. Alexander testified that Plaintiff "had a concussion," and suffered "loss of consciousness." Dr. Alexander was asked to describe what happens to the brain, and he testified that, "that's not my specialty, but I'm – you know, in lay terms it means that your head hit so hard that it just shorts out the electrical impulses in the brain and consciousness does not allow the patient to communicate…."

Defendant objects to the above testimony on the ground that the opinion set forth above was not included in the scope of testimony identified by Plaintiff in his Rule 26(a) disclosure. However, Dr. Alexander is certainly qualified to testify as to what he observed upon reviewing Plaintiff's medical records. If Plaintiff suffered a concussion, and the medical records reflect that injury, Dr. Alexander as the treating physician may

testify about Plaintiff's injuries. Notably, however, Plaintiff's supplemental disclosure does not include Dr. Alexander testifying about Plaintiff's concussion injury.

Turning to the second area of objectionable opinion testimony, Defendant objects to the line of questioning where Dr. Alexander describes the amount of force it takes to fracture and displace a bone. During questioning about the surgical repair he performed, Dr. Alexander offered his impromptu opinion that, "in this case it was a high-energy injury." Alexander Depo. at 28 (Dkt. 33-2 at 28.) Counsel followed up, asking Dr. Alexander to describe what that meant. *Id.* Dr. Alexander answered that, "there was lots of energy involved….a lot of speed, a lot of energy involved" in this accident. Dr. Alexander testified that he formed this opinion—that Plaintiff suffered a high-energy injury to his clavicle—based upon what he saw on the x-rays and the history he obtained from review of the records and discussion with the patient. Dr. Alexander also formed his opinion that it was a high-energy impact because of "what [he] found at surgery because the fragments of the—the larger fragment, this fragment right here, was totally devoid of soft-tissue attachments." Defendant objected on the basis of lack of foundation.

Defendant objects to the introduction of this testimony on the grounds that Dr. Alexander's opinions are based upon assumptions, and they ignore the respective size of the persons involved, whether there was a pre-existing injury to the shoulder, or other mitigating factors. Accordingly, Defendant argues the testimony does not meet the standards of Rule 702, and may be misleading to the jury. Defendant argues also that Dr. Alexander's opinions about the force of the impact causing the injury was not within the scope of the initial disclosures.

Rule 702 permits a witness to testify in the form of an opinion if the expert's specialized knowledge will help the trier of fact to understand the evidence; the testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case. Rule 703 permits an expert to base an opinion on "facts or data in the case that the expert has personally observed." In this case, Dr. Alexander based his opinion about the degree of force or impact based upon his personal observation of the bone and bone fragments during the surgery he performed. Further, the degree of force is partly a matter of common sense, considering Plaintiff suffered a completely displaced fracture of his clavicle. Dr. Alexander's opinion that the impact or injury was "high-energy" may help the jury determine whether Defendant was exercising reasonable care or not given the location of the collision at the base of the ski mountain.

As for Defendant's argument that Dr. Alexander's opinions stray from the scope of Plaintiff's initial disclosures, Plaintiff's initial disclosures arguably encompass such opinion testimony. Plaintiff indicated Dr. Alexander would illustrate to the jury how the fractures occurred based upon Plaintiff's medical records and Dr. Alexander's personal observations. Dr. Alexander testified that he based his opinion about the force of impact upon the x-rays, Plaintiff's medical history, and by what he observed during surgery. Dr. Alexander's opinions about the force required to completely displace Plaintiff's clavicle bone arguably fall within the broad scope described in the initial disclosures, and did not require submission of a written report. *See Goodman v. Staples*, 644 F.3d 817, 826 (9th

Cir. 2011) (treating physician is exempt from Rule 26(a)(2)(B)'s written report requirement if his or her opinions were formed during the course of treatment).

Furthermore, Defendant obtained a rebuttal opinion of Dr. Jeffrey Hessing who examined the pre- and post-operative medical records. According to Dr. Hessing, he "would not classify the forces involved as high velocity" because the type of fracture was a fairly common fracture pattern. If Dr. Alexander's opinions are allowed into evidence, Dr. Hessing's testimony provides rebuttal for the jury to evaluate. Plaintiff indicated during the hearing he had no objection to the introduction of Dr. Hessing's testimony. Therefore, any unfair surprise caused by Dr. Alexander's testimony is cured by Dr. Hessing, Defendant's rebuttal expert.

The motion in limine to exclude the testimony by Dr. Alexander about the force of injury and the concussive symptoms is **DENIED**. However, Defendant's objection is preserved for all purposes, and he does not need to restate the objection at trial.

**2. Contractual Adjustments**

Defendant argues Idaho Code § 6-1606 precludes presentation of evidence of Medicare adjustments and contractual write-downs taken by GEHA, and that Plaintiff should be allowed to present only the amount actually paid for medical services to the jury.

Idaho Code § 6-1606 prohibits double recoveries from collateral sources in any action for personal injury. The statute provides that judgment may be entered "only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury…. For the purposes of this section, collateral

sources shall not include benefits paid under federal programs which by law must seek subrogation…and benefits paid which are recoverable under subrogation rights created under Idaho law or by contract. Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources."[2]

In *Dyet v. McKinley*, 81 P.3d 1236, 1239 (Idaho 2003), the Idaho Supreme Court held that Idaho Code § 6-1606 applies to prevent plaintiffs from recovering the amount of a Medicare write-off from a tortfeasor so as to prevent a double recovery. The court explained that, although the write-off is not technically a collateral source, "it is the type of windfall that Idaho Code § 6-1606 was designed to prevent." The write-off is "not an item of damages for which plaintiff may recover because plaintiff has incurred no liability therefore."

Later, in *Slack v. Kelleher*, 104 P.3d 958, 967 (Idaho 2004), the court had occasion to revisit *Dyet*. There, the court held that the district court erred when it denied

[2] The collateral source rule is a rule that allows a claimant to collect damages for medical and hospital care from the defendant even if he has insurance to cover them. Black's Law Dictionary, 2nd Edition. The Court of Appeals for the Ninth Circuit, discussing California law, explained that the "collateral source rule ... embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence." *Berg v. First State Ins. Co.*, 915 F.2d 460, 467 (9th Cir. 1990). In other words, a defendant should not be able to avoid payment of full compensation for the injury inflicted because the plaintiff provided himself with insurance. *Id.*

defendant's post-judgment motion seeking to have the medical expense award reduced due to Medicare write-offs under Idaho Code § 6-1606. The court remanded the matter for the district court to reduce the judgment by the appropriate amount of the write downs. *Id.*

Finally, in *Carrillo v. Boise Tire Co., Inc.*, 274 P.3d 1256, 1269 (Idaho 2012), the court had a third occasion to review the application of Idaho Code § 6-1606 in a motor vehicle accident case. Defendant moved post-judgment to reduce the damage award by the amount of plaintiff's past social security disability benefits. The court explained that Idaho Code § 6-1606 was enacted to require collateral source payments to be deducted from damage awards. *Id.* at 1268. The court held that the plaintiff's disability benefits were amounts received from a collateral source as compensation for personal injury, and vacated the judgment as to plaintiff's personal injury award. The court instructed the trial court to reduce the award by the amount of the plaintiff's social security disability benefits received at the time judgment was entered. *Id.* at 1269.

Based upon the above, it appears Idaho Code § 6-1606 operates to prevent an injured party from recovering damages for the amount of the write-offs or contractual adjustments provided for by Medicare or private insurance. But, confounding this triad of cases is *Verska v. St. Alphonsus Regional Med. Ctr.*, 265 P.3d 502 (Idaho 2011). *Verska* mentioned *Dyet* in its discussion of statutory interpretation, indicating *Dyet* was a case in which the Idaho Supreme Court did not address whether it had considered the unambiguous statute absurd as written. *Verska*, 265 P.3d at 508. The court continued, explaining that it has never agreed with arguments that would invite disagreement with a

statute because its wording, when found unambiguous, would produce an absurd result. *Id.* at 509. The court concluded by stating that it has not, and cannot, revise or void an unambiguous statute on the ground that it is patently absurd or would produce absurd results when construed as written. *Id.* The court then confirmed the rules of statutory interpretation, explaining the difference between ambiguous versus unambiguous statutes. *Id.*

While not mentioning *Dyet* in anything other than a string citation, and having not referred specifically to Idaho Code § 6-1606, later cases have recognized that *Verska*'s holding abrogated *Dyet. See Kaseburg v. State of Idaho*, 300 P.3d 1058, 1065 (Idaho 2013) (recognizing that *Verska*'s holding abrogated the holding in *Dyet*). Turning to Idaho Code § 6-1606, *Verska*'s impact upon the holding in *Dyet* would exclude from the definition of "collateral source" benefits paid by Medicare and private insurance, and render evidence of payments by Medicare and private insurance admissible and potentially not subject to reduction by the Court. *Slack*, however, has not been overruled or otherwise abrogated.

During the hearing on Defendant's motion in limine, the Court explained that it was still examining the impact of *Verska* on *Dyet*, and indicated its understanding that the amount of the write down[3] would not be considered a part of the damages. But, the Court

[3] Generally, when a physician bills the patient's insurance provider, the entirety of the physician's bill is submitted. If the physician is a contracting physician, Medicare and private insurance "allow" a certain amount, and pay that amount less any deductible or co-payment, which is the patient's responsibility. The difference is the contractual write-off. Thus, as an example, for a $150 medical bill, $100 may be "allowed," insurance will pay $75, and the patient pays $25.

instructed Plaintiff should present the entirety of his medical bills and, if damages are awarded, the Court would consider the extent to which damages should be reduced by any contractual write-offs that neither Plaintiff nor any insurer was obligated to pay. Plaintiff was in agreement with the Court's procedure. Based upon the above authorities, and the uncertainty of *Verska*'s impact upon *Dyet* given the holding in *Slack*, the Court will adhere to the procedure outlined above and as explained to the parties during the hearing. The Court will entertain a motion post-trial addressing reduction of any award consistent with the above authorities.

The motion in limine seeking to exclude the amount of the write-offs or contractual adjustments by Medicare and GEHA is therefore **DENIED** at this time.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion in Limine (Dkt. 33) is **DENIED.**

UNITED STATES COURTS DISTRICT OF IDAHO

Dated: **July 28, 2015**

Honorable Candy W. Dale
United States Magistrate Judge